UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **DENNIS G. ANDERSON,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:07CV336MLM |
| ) | |
| **GAMACHE & MYERS, P.C.,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **WORLDWIDE ASSET** ) | |
| **PURCHASING LLC** ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Before the court are the Motion to Dismiss filed by Defendant Gamache & Myers, P.C, and the Motion to Dismiss filed by Defendant Worldwide Asset Purchasing LLC (jointly, "Defendants"). Doc. 9, Doc. 12. Plaintiff Dennis G. Anderson ("Plaintiff") has filed a Response. Doc. 14. Defendants have each filed a Reply. Doc. 15, Doc. 16.

### BACKGROUND

In his Complaint Plaintiff alleges that Defendant Gamache & Myers P.C. ("G&M") is a professional corporation which regularly attempts to collect consumer debts asserted to be due to another and that Defendant Worldwide Asset Purchasing LLC ("Worldwide Asset") is also a company which regularly attempts to collect consumer debts asserted to be due to another. Plaintiff further alleges that prior to September 4, 2004, Plaintiff entered into one or more credit transactions with Direct Merchant Bank; that Direct Merchant Bank charged-off Plaintiff's account and assigned the debt to Worldwide Asset; that in or around March 2006 Worldwide Asset hired G&M to file a lawsuit against Plaintiff to collect the assigned debt; that a lawsuit was filed in State court in which

Worldwide Asset sued Plaintiff; that, in support of its State Petition, Worldwide Asset's agent, Shanta Barr, submitted an affidavit alleging she was qualified and authorized to make the affidavit although this statement was not true; that prior to March 10, 2006, Plaintiff received a letter from American Mediation & Alternative Resolutions ("AMAR") offering to assist Plaintiff in resolving the lawsuit filed by Worldwide Asset; that Plaintiff subsequently entered into a contract with AMAR to assist in resolving the lawsuit filed by Worldwide Asset; that at all relevant times neither AMAR nor any of its agents or employees were authorized to practice law in Missouri; that at all relevant times G&M was aware that AMAR was not authorized to practice law in Missouri; that despite this knowledge, G&M entered into direct negotiations with AMAR in an attempt to settle Worldwide Asset's lawsuit against Plaintiff; that on about March 10, 2006, G&M sent a communication to Plaintiff suggesting that a settlement of the Worldwide Asset lawsuit had been reached whereby Plaintiff would pay $175 a month to G&M commencing March 28, 2006; that at the time Plaintiff received the March 10, 2006 communication from G&M Plaintiff had never agreed with anyone at G&M to make the payments of $175 a month, in direct contradiction to the statements made by G&M in its communication to Plaintiff; and that on March 13, 2006, Worldwide Asset, through G&M, took a default judgment against Plaintiff for $2,626.30. Doc. 1, ¶ ¶ 6-22.

In Count I, ¶ 23(a)-(c), of his Complaint Plaintiff alleges that in its attempt to collect the alleged debt from Plaintiff, G&M violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692e(10), by using false, deceptive, and/or misleading means to collect a debt by assisting AMAR in the unauthorized practice of law; by sending Plaintiff, an unsophisticated consumer, a communication suggesting that Worldwide Asset's claims had been settled pursuant to Plaintiff's agreement to pay $175 a month when the lawsuit had not been settled and with G&M's knowing that it intended to take a default judgment against Plaintiff; and by taking a default judgment against

2

Plaintiff in March 2006 after communicating to Plaintiff its willingness to accept monthly payments of $175, thereby causing Plaintiff to mistakenly conclude that the lawsuit filed by Worldwide Asset had been settled and that no default judgment would be taken against Plaintiff.

In Count II, ¶ 26(d)-(j), Plaintiff alleges that, in its attempt to collect the alleged debt from Plaintiff, Worldwide Asset violated the FDCPA, 15 U.S.C. § 1692e(10), by the same conduct alleged in Count I and by using false, deceptive and/or misleading means to collect or attempt to collect a debt by attaching an affidavit to verify its Petition against Plaintiff even though the affidavit was not based on Worldwide Asset's personal knowledge as required by Missouri law; by including false statements in this affidavit; by making statements in the affidavit which were outside of the knowledge of Worldwide Asset; by attaching a copy of an unsigned "Cardholder Agreement" to its Petition which misled Plaintiff, an unsophisticated consumer, into believing that Worldwide Asset had possession of the records necessary to prove Plaintiff's debt; by charging Plaintiff interest and other fees which are not authorized by any agreement allegedly creating the debt; by bringing a legal action which is outside the applicable five-year statute of limitations; and by characterizing the amount of money it was seeking as "principal" when the amount actually was comprised of principal, interest, and late fees even though no document exists which provides the right to collect interest or late fees from Plaintiff.

## LEGAL STANDARD FOR A MOTION TO DISMISS

A court may dismiss a cause of action for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Alexander v. Peffer, 993 F.2d 1348, 1349 (8th Cir. 1993). "The issue is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support [its]claim." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). See also Bennett v.

Berg, 685 F.2d 1053, 1058 (8th Cir. 1982) (a complaint should not be dismissed merely because the court doubts that a plaintiff will be able to prove all of the necessary factual allegations). The court must review the complaint most favorably to the plaintiff and take all well-pleaded allegations as true to determine whether the plaintiff is entitled to relief. Conley, 355 U.S. at 45-46. A dismissal under Rule 12(b)(6) should be granted only in the unusual case in which a plaintiff has presented allegations that show on the face of the complaint that there is some insuperable bar to relief. Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994).

## G&M's MOTION TO DISMISS

In its Motion to Dismiss G&M contends that the court should dismiss Plaintiff's claim that G&M violated the FDCPA by engaging in the unauthorized practice of law and cites Reade-Alvarez v. Eltman, Eltman & Cooper, P.C., 369 F. Supp.2d 353, 359-60 (E.D.N.Y. 2005), in support of its Motion. Plaintiff argues that his allegation that G&M engaged in the unauthorized practice of law is an issue which is properly before this court and cites Division of Employment Security v. Westerhold, 950 S.W.2d 618 (Mo. Ct. App. 1997), in support of this position. Plaintiff further argues that Read-Alvarez is not applicable in the matter under consideration because that case was dependent on state law providing that the unauthorized practice of law is a matter for the state bar association, while under Missouri law the unauthorized practice of law is a matter properly decided by the courts.

Section 1692e of the FDCPA provides, in relevant part:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

...

(9) The use or distribution of any written communication ... which creates a false impression as to its source, authorization, or approval.

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

In Reade-Alvarez v. Eltman, Eltman & Cooper, P.C., 369 F. Supp.2d 353, 359-60 (E.D.N.Y. 2005), the court held, in relevant part:

> Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors, [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. §1692(e). The legislative history of the Act demonstrates that the statute was passed in response to "collection abuses such as ... impersonating [] attorneys, and simulating legal process.'" Kropelnicki v. Siegel, 290 F.3d 118, 127 (2d Cir.2002) (citing S.Rep. No. 95-382, at 2 (1977), reprinted in, 1977 U.S.C.A.A.N. 1695, 1696).
>
> ...
>
> A letter sent by an attorney on behalf of a debt collector must be a product of "some degree of attorney involvement," including direct control or supervision of the process through which the letter is sent. Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 301 (2d Cir.), cert. denied, 540 U.S. 823, 124 S.Ct. 153, 157 L.Ed.2d 44 (2003). ...
>
> ... [A]llegations relating to the "*unauthorized practice of law*" are "the *province of* state bar associations and *state courts*. Plaintiffs' allegations in this matter certainly might interest [New York State's] Attorney Registration and Disciplinary Committee, but they do not appear to be cognizable under the FDCPA." Bass v. Arrow Fin. Servs., L.L.C., 2002 WL 1559635, at *3 (N.D.Ill. July 16, 2002).

(emphasis added).

While the court in Westerhold, did hold that "[i]t is the responsibility of the judiciary to determine what constitutes the practice of law, both authorized and unauthorized," Westerhold was not a matter filed pursuant to the FDCPA; Westerhold did not address whether claims of the unauthorized practice of law are cognizable under the FDCPA. Westerhold, 950 S.W.2d at 620 (citing Risbeck v. Bond, 885 S.W.2d 749, 750 (Mo. Ct. App.1994)). Significantly, not only did the court in Reade-Alvarez conclude that engaging in the unauthorized practice of law is not cognizable

5

under the FDCPA, it specifically held that such an allegation is the province of the state courts. Thus, despite Plaintiff's assertion to the contrary, Reade-Alvarez is applicable to Plaintiff's claim that G&M engaged in the unauthorized practice of law.

It is clear, therefore, that Plaintiff's claim in Count I, ¶ 23(a), that G&M violated the FDCPA, § 1692e(10), by using false, deceptive, and/or misleading means to collect a debt by assisting AMAR in the unauthorized practice of law is not cognizable pursuant to FDCPA. See Reade-Alvarez, 369 F. Supp.2d at 359-60. As such, the court finds that Count I, ¶ 23(a), of Plaintiff's Complaint should be dismissed. Because in Count I, ¶¶ 23(b) and (c), Plaintiff alleges G&M violated the FDCPA by conduct other than engaging in the unauthorized practice of law, those allegations will not be dismissed pursuant to G&M's motion.[1]

## WORLDWIDE ASSET'S MOTION TO DISMISS

First, Worldwide Asset alleges that claims made by Plaintiff against it should be dismissed because Plaintiff's claims are inextricably intertwined with the State court judgment and that, therefore, the Rooker-Feldman doctrine applies. Second, Worldwide Asset alleges that claims made by Plaintiff against it should be dismissed because Plaintiff's claims are barred by res judicata. Third, Worldwide Asset alleges that Plaintiff's Complaint should be dismissed as it is time barred pursuant to the applicable statute of limitations.

**A.    The Rooker-Feldman Doctrine:**

The Rooker-Feldman Doctrine provides that a federal district court lacks jurisdiction to consider a claim which "in effect constitutes a challenge to a state court decision." Ballinger v.

---

[1] G&M asserts that Plaintiff's claim against G&M should be dismissed in its entirety. In its Motion to Dismiss and in its Memorandum of Law in Support of its Motion to Dismiss, however, G&M only addresses the allegation of ¶ 23(a) that G&M violated the FDCPA by engaging in the unauthorized practice of law. G&M's Motion and Memorandum do not address the allegations of ¶¶ 23(b) and (c).

Culotta, 322 F.3d 546, 549 (8th Cir. 2003) (citing District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923)). Under the Rooker-Feldman Doctrine, "'with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgments.'" Id. (quoting Lemonds v. St. Louis County, 222 F.3d 488, 492 (8th Cir.2000) (citing Feldman, 460 U.S. at 476; Rooker, 263 U.S. at 416). The Rooker-Feldman Doctrine precludes both straightforward and indirect attempts to "undermine state court decisions." Lemonds, 222F.3d at 492. The Eighth Circuit Court of Appeals explained in Ballinger that:

> District courts may not review state court decisions, "even if those challenges allege that the state court's action was unconstitutional," Feldman, 460 U.S. at 486, 103 S.Ct. 1303, because "[f]ederal jurisdiction to review most state court judgments is vested exclusively in the United States Supreme Court," Lemonds, 222 F.3d at 492 (citing 28 U.S.C. § 1257; Feldman, 460 U.S. at 486, 103 S.Ct. 1303). A party who was unsuccessful in state court thus "is barred from seeking what in substance would be appellate review of the state judgment in a United States district court based on the losing party's claim that the state judgment itself violates the loser's federal rights." Johnson v. DeGrandy, 512 U.S. 997, 1005-1006, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994) [internal citation omitted]. This jurisdictional bar extends not only to "straightforward appeals but also [to] more indirect attempts by federal plaintiffs to undermine state court decisions." Lemonds, 222 F.3d at 492. Federal district courts thus may not "exercis[e] jurisdiction over general constitutional claims that are 'inextricably intertwined' with specific claims already adjudicated in state court." Id. at 492-93 (citations omitted).
>
> A claim brought in federal court is inextricably intertwined with a state court judgment "if the federal claim succeeds only to the extent that the state court wrongly decided the issue before it." Id. at 493 (citing Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring)).

322 F.3d at 548-49.

In Heartland Academy Community Church v. Waddle, 335 F.3d 684, 688 (8th Cir. 2003), the Eighth Circuit further explained the Rooker-Feldman Doctrine and stated that:

> Under the Rooker-Feldman doctrine, "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment

itself violates the loser's federal rights." Johnson v. De Grandy, 512 U.S. 997, 1005-06, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994). In other words, original federal jurisdiction over state-court judgments is reserved to the Supreme Court. Verizon Md. Inc. v. Pub. Serv. Comm'n, 535 U.S. 635, 644 n. 3, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002). There will be no jurisdiction in the lower federal courts if the constitutional claims raised in a federal case are "inextricably intertwined" with a state-court decision. D.C. Ct. of Appeals v. Feldman, 460 U.S. 462, 483 n. 16, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

In Todd v. Weltman, Weinberg & Reis Co., L.P.A., 434 F.3d 432 (6th Cir. 2006), as in the matter under consideration, the plaintiff alleged that the defendant violated the FDCPA by executing and filing a false, deceptive, or misleading affidavit in a state court action which action was aimed at collecting a debt. Further, as in the matter under consideration, the defendant in Todd claimed that the plaintiff's allegation should be dismissed pursuant to the Rooker-Feldman doctrine because the plaintiff's FDCPA claim was inextricably intertwined with the state court's decision that the affidavit submitted by the creditor was valid.[2]

The Sixth Circuit held in Todd that the plaintiff's claim was not that he was injured as a result of the state court judgment "as did the plaintiffs in Rooker and Feldman," but that the plaintiff in Todd filed an "independent federal claim that [he] was injured by Defendant when he filed a false affidavit." 434 F.3d at 436. In reaching this conclusion the court relied on Exxon Mobil Corp. v. Saudi Basic Industries, Corp., 544 U.S. 280, 293 (2005), in which the Court held that:

---

[2]  In Todd, 434 F.3d at 432, the defendant, a law firm, initiated garnishment proceedings on behalf of a creditor after the plaintiff defaulted on a loan and after a judgment had been obtained regarding the debt. Ohio law required in garnishment proceedings that an affidavit be filed stating the "the affiant has a reasonable basis to believe that the person named in the affidavit as the garnishee may have property, other than personal earnings, of the judgment debtor that is not exempt under the law of this state or the United States." Id. at 435. The defendant had submitted such an affidavit and the Ohio court found that the affidavit was valid and froze the Plaintiff's bank account. Id. In the federal action, the plaintiff alleged the state court had no factual basis to believe that the plaintiff's bank account contained non-exempt assets.

8

> [D]isposition of [a] federal action, once the state-court adjudication is complete, [is] governed by preclusion law. The Court further held that a federal court need not refrain from exercising "subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party ..., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'"

434 F.3d at 436 (quoting GASH Assocs. v. Rosemont, 995 F.2d 726, 728 (7th Cir. 1993)). See also Johnson v. Riddle, 305 F.3d 1107, 1116 n.7 (10th Cir. 2002) ("Even if the parties were the same, [the party asserting the Rooker-Feldman Doctrine] would have to establish that the federal [FDCPA] action constitutes a challenge to a relevant state court judgment.").

In the matter under consideration Plaintiff does not challenge the validity of the State court's judgment; rather, Plaintiff's claim exclusively addresses Worldwide Asset's conduct in attempting to collect a debt in violation of the FDCPA, including its submitting an allegedly false affidavit and attaching a copy of the Cardholder Agreement to the State Petition. As such, the court finds that the Rooker-Feldman Doctrine is not applicable to Plaintiff's allegations against Worldwide Asset and that, therefore, Worldwide Asset's Motion to Dismiss should be denied in this regard. Todd, 434 F.3d at 437; Johnson, 305 F.3d at 1116 n.7.

**B.     Res Judicata:**

Worldwide Assert contends that res judicata applies to the claims which Plaintiff makes against it. Plaintiff argues to the contrary.

Res judicata is referred to as "claim preclusion," as it "precludes the same parties or those in privity from relitigating a cause of action." AgriBank FCB v. Cross Timbers Ranch, Inc., 919 S.W.2d 263, 269 (Mo. Ct. App. 1996). The Eighth Circuit Court of Appeals has outlined a four-part test to determine when res judicata bars re-litigation of a claim: (1) the first suit must result in a final judgment on the merits; (2) the first suit must be based on proper jurisdiction; (3) both suits must

involve the same nucleus of operative fact; and (4) both suits must involve the same parties or their privies. Kolb v. Scherer Bros. Fin. Servs. Co., 6 F.3d 542, 544 (8th Cir. 1993); Lane v. Peterson, 899 F.2d 737, 741 (8th Cir. 1990). The judgment is conclusive as to all matters within the scope of the pleadings which could and should have been adjudicated. See id. at 741.

Upon issuing a default judgment against Plaintiff in the State collection action the State court did not address the issues or claims raised in Plaintiff's Complaint. Moreover, the cause of action which Plaintiff seeks to litigate in the matter under consideration is not the same cause of action upon which the State court entered its default judgment. The court finds, therefore, that although the parties in the State action were the same as the parties in the matter under consideration and although the State court issued a final judgment as to the matters before it, res judicata is not applicable to Plaintiff's allegations against Worldwide Asset. As such, the court finds that the Worldwide Asset's Motion to Dismiss should be denied in this regard.

**C.     The Statute of Limitations:**

Worldwide asset asserts that Plaintiff's claims are barred by the applicable statute of limitations, FDCPA, § 1692k(d), which provides as follows:

> An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within *one year from the date on which the violation occurs*.

(emphasis added).

In support of its claim that this statute bars Plaintiff's Complaint, Worldwide Asset asserts that the State Petition was filed on January 27, 2006; that Plaintiff was served on February 15, 2006; that Plaintiff filed the Complaint in the matter under consideration on February 15, 2007; that the one-year statute of limitations commenced to run from the date Worldwide Asset last had the opportunity to comply with the FDCPA; and that this date was January 27, 2006. In support of this position

10

Worldwide Asset cites Mattson v. U.S. West Communications, Inc., 967 F.2d 259, 261 (8th Cir. 1992). Plaintiff, on the other hand, argues that the statute of limitations applicable to his FDCPA cause of action did not commence to run until he was served with the State Petition; that he was served with the Petition on February 15, 2006; that he had until midnight on February 15, 2007, to file the Complaint; and that, therefore, his Complaint which was filed at 6:37 p.m. on February 15, 2007, is not barred by § 1692k(d). In support of his position Plaintiff cites Johnson v. Riddle, 305 F.3d 1107 (10th Cir. 2002).

Upon interpreting § 1692k(d) the Eighth Circuit has held that the date the violation of the FDCPA occurs is the date that a defendant does not comply with the FDCPA's requirements. Freyermuth v. Credit Bureau Servs., Inc., 248 F.3d 767, 770 (8th Cir. 2001) ("[T]he date [] the violation of the FDCPA occurs [is] on the date *the letter* that allegedly does not comply with the FDCPA's requirements is sent to the debtor.") (emphasis added) (citing Mattson, 967 F.2d at 261). In Mattson, 967 F.2d at 261, the Eighth Circuit held that the date upon which *letters* which allegedly violated the FDCPA *were mailed* was the defendant's last opportunity to comply with the FDCPA, and, hence, the mailing of the letters triggered § 1692k(d) rather than the date the letters were received. In reaching this conclusion the court considered that "the date of mailing is a date which may be '*fixed by objective and visible standards,*' one which is easy to determine, ascertainable by both parties, and may be easily applied." Id. (emphasis added).[3]

---

[3] The Ninth Circuit considered in Naas v. Stolman, 130 F.3d 892, 893 (9th Cir. 1997), "at which point the statute of limitations begins to run when the alleged violation of the [FDCPA] is the filing of a lawsuit." The issue before the court was whether the statute commenced to run from the day the state appellate court issued its decision or from the date a complaint was filed in state court. Noting that it had not previously addressed this issue and that other circuit courts had not done so, the Ninth Circuit considered that in Prade v. Jackson & Kelly, 941 F.Supp. 596, 599-600 (N.D.W.Va.1996), the court held that the violation occurred and the statute of limitations started to run on either the day the complaint was filed or on the day it was served, but found it unnecessary to choose between these two alternatives under the facts

11

The Tenth Circuit in Johnson, 305 F.3d 1107, specifically considered whether the statutory period of §1692k(d) commenced to run when a complaint was filed in state court or whether it commenced to run when the complaint was served. The Tenth Circuit noted that the Eighth Circuit, in Mattson, 967 F.2d at 261, established a "two-part test for determining when an FDCPA cause of action accrues" and that this test considers whether the date from which the statute of limitations commences to run "is easy to determine, ascertainable by each party, and easily applied." Johnson, 305 F.3d at 1114 n.4. The court in Johnson, 305 F.3d at 1114 n.4, held that "it is clear that the

---

before it. The Ninth Circuit also considered that in Blakemore v. Pekay, 895 F.Supp. 972, 982-83 (N.D. Ill.1995), the district court held that the statute of limitations began to run "from the day garnishment proceedings were initiated."

In Naas, 130 F.3d at 893, the Ninth Circuit concluded that for purposes of the FDCPA the statute of limitations begins to run on the filing of the complaint in state court where the alleged wrongdoing relates to the filing of a state lawsuit. Upon reaching this conclusion the Ninth Circuit relied on the Eighth's Circuit's holding in Mattson and reasoned that:

> ... This result is consistent with other circuit courts' interpretations of the Act in which they have held in the analogous nonfiling situation that the Act's statute of limitations *begins to run when a harassing collection letter is mailed.* Maloy v. Phillips, 64 F.3d 607, 608 (11th Cir.1995); Mattson v. U.S. West Communications, 967 F.2d 259, 261 (8th Cir.1992). These courts reasoned that the purpose of the Act is to regulate the actions of debt collectors; because the mailing date was the debt collector's "last opportunity to comply with the [Act], ... the mailing of the letters, therefore, triggered section 1692k(d)." Mattson, 967 F.2d at 261; see Maloy, 64 F.3d at 608. In addition, "the date of mailing is a date which may be 'fixed by objective and visible standards,' one which is easy to determine, ascertainable by both parties, and may be easily applied." Mattson, 967 F.2d at 261; see Maloy, 64 F.3d at 608.
>
> These considerations apply equally to this case. Filing a complaint is the debt collector's last opportunity to comply with the Act, and the filing date is easily ascertainable.

Id. (emphasis added).

*Mattson test militates in favor of the conclusion that the claim accrues upon service rather than filing.*" Upon reaching this conclusion the Tenth Circuit reasoned that if the limitations clock began with the filing of suit rather than the service of process, a defendant "could effectively block any action under the federal statute by filing suit and then delaying service. In fact, a delay of service for an entire year (so that the debtor remained unaware of the lawsuit during that time) could cause the limitations period to run out before there was any opportunity for the debtor to bring suit under the FDCPA."[4] Id. at 1114.

This court finds the Tenth Circuit's reasoning and interpretation of Mattson persuasive. If the statute of limitations were to run while a defendant delayed service, the result would be absurd and in contradiction of the policy behind the FDCPA. Moreover, the date of service is a precise and easily ascertainable date. Furthermore, to the extent that the court in Mattson held that the date of mailing triggered the running of statute of limitations, this was in the context of an allegation that the FDCPA was violated by the sending of a letter by a creditor, not by the filing of a cause of action as in Johnson and the matter under consideration. See Cohen v. Beachside Two-I Homeowners' Ass'n, 2006 WL 1795140, at * 9 (D. Minn. Jun. 29, 2006). As such, the court finds that the one-year period of § 1692k(d) commenced running on the date Plaintiff was served with the State Petition, February 15, 2006.

Plaintiff filed his Complaint in the matter under consideration on the last day of the one-year period of § 1692k(d). As stated by the court in Johnson, 305 F.3d at 1114, Fed. R. Civ. P. 6(a)

---

[4] The Tenth Circuit in Johnson, 305 F.3d at 114 n.4, distinguished Naas, 130 F.3d at 893, on the grounds that "the Naas court never discussed, and apparently never considered, the possibility that the claim accrued upon service." The court in Johnson, further reasoned that had the court in Naas considered this possibility it would have concluded that pursuant to Mattson's two-part test a claim accrues upon service rather than filing and that, therefore, the statute does not commence to run until service. Id.

13

provides that in computing a statutory period "the last day of the period so computed shall be included." Further, as held by the court in Johnson, § 1692k(d) provides that suit must be filed "within one year." Id. at 1115. The plain meaning of this language is that "suit must be filed on or before the anniversary date of the event, not the day before the anniversary."[5] Id. As Plaintiff in the matter under consideration filed the Complaint on the anniversary date of the date of service of the State Petition, this court finds that the Complaint in the matter under consideration was filed within one year after service and that the Complaint is timely pursuant to § 1692k(d).

## CONCLUSION

For the reasons set forth above, the court finds that the Motion to Dismiss filed by G&M should be granted, in part, and denied, in part, and that the Motion to Dismiss filed by Worldwide Asset should be denied.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion to Dismiss filed by Defendant Gamache & Myers, P.C., is **GRANTED**, in part, and **DENIED**, in part; Doc. 9

**IT IS FURTHER ORDERED** that Count I, ¶ 23(a), of the Complaint is **DISMISSED**;

---

[5] To the extent that Mattson, 967 F.3d 259, refused to apply Rule 6(a) to the FDCPA, as noted by the Tenth Circuit in Johnson, 305 F.3d at 1115, Mattson relied on Rust v. Quality Car Corral, Inc., 614 F.2d 1118 (6th Cir. 1980), which case was overruled by Bartlik v. United States Department of Labor, 62 F.3d 163, 166 (6th Cir. 1995). Additionally, in Moore v. United States, 173 F.3d 1131, 1135 (8th Cir. 1999), the Eighth Circuit subsequently acknowledged that Rule 6(a) is applicable to calculating federal statutes of limitations.

**IT IS FURTHER ORDERED** that the Motion to Dismiss filed by Defendant Worldwide Asset Purchasing, LLC, is **DENIED**; Doc. 12

|  |  |
|---|---|
|  | /s/Mary Ann L. Medler |
|  | MARY ANN L. MEDLER |
| Dated this 31st day of May, 2007. | UNITED STATES MAGISTRATE JUDGE |