UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DENNIS G. ANDERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:07CV336MLM |
| ) | |
| GAMACHE & MYERS, P.C., ) | |
| ) | |

## MEMORANDUM OPINION

Before the court is the Motion for Summary Judgment filed by Defendant Gamache & Myers, P.C. ("Defendant"). Doc. 35. Plaintiff Dennis Anderson ("Plaintiff") has filed a Response. Doc. 36. Defendant has filed a Reply. Doc. 37. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 17.

### UNDISPUTED FACTS [1]

Defendant is a professional corporation which regularly attempts to collect consumer debts asserted to be due to another. Plaintiff was served with a Petition filed in the Circuit Court of St. Louis County, Missouri, with a return date of March 13, 2006. The Petition, filed by Worldwide Asset Purchasing, LLC, ("Worldwide"), alleged that Plaintiff was indebted to Worldwide on account of credit card services in the amount of $2,327.83. On or about March 10, 2006, Plaintiff contracted with American Mediation & Alternative Resolutions ("AMAR") and signed an Agency and Limited Power of Attorney Appointment. This document states, in relevant part, as follows:

> I hereby make, constitute and appoint American Mediation & Alternative Resolutions my agent and true and lawful attorney-in-fact, ... giving to American Mediation &

---

[1] The facts are undisputed unless otherwise stated.

> Alternative Resolutions full power to do and perform all and every act that I may legally do through an attorney-in-fact and every power necessary <u>to carry out the limited purpose for which this power is granted</u>: **To mediate a resolution (based solely on the financial component) and to effect a reasonable settlement with:**
>
> **CREDITOR: World Wide Asset Purchasing LLC**
>
> All communications with creditor shall be through American Mediation. ... This is a mediation process and no legal advice can or will be provided under this agreement.

(emphasis in original).

Defendant has submitted as an exhibit a Fax Transmittal Sheet which reflects that AMAR transmitted to Defendant on March 10, 2006, a copy of the above described Agency and Limited Power of Attorney which Plaintiff signed along with a cover sheet which states, in relevant part, as follows:

> If you would be receptive to a mediated resolution based solely on the financial component of the above issue, the following is being submitted for your consideration and response. American Mediation is a non-attorney firm. A limited power of attorney authorization is attached.
>
> ***TIME SENSITIVE COMMUNICATION***: The court date is scheduled for **3/13/06**.
>
> Dennis Anderson has an outstanding obligation for the approximate principal debt amount of $2,328, plus other fees. <u>The following is taken from a statement by, and is being provided at the request of Dennis Anderson</u>.
>
> Mr. Anderson, age 53, states he is married and employed as a teacher's assistant.
>
> Mr. Anderson does not dispute this debt. He says he simply fell behind in his payments of this obligation, and wants to put this matter behind him. <u>Dennis Anderson would like to enter into an agreement to retire this obligation and wishes to avoid the scheduled court appearance if possible</u>.
>
> ***<u>He understands a judgment will be taken against him if an agreement is reached in this matter.</u>***
>
> **Payment request**: Monthly payments of $175 beginning 3/28/2006, and continuing on the same day of each successive month until retired.

...

The default date of this case filing is on or about 3/13/2006. In the meantime, it is our hope a mediated resolution can be reached. We look forward to your timely response as to the terms acceptable.

(emphasis in original).[2]

Subsequently, on March 13, 2006, at 10:54 a.m., subsequent to the time court convened as set forth on the summons of the St. Louis County Petition, Defendant faxed to AMAR a letter dated March 10, 2006, addressed to Plaintiff. Defendant did not mail to Plaintiff the letter which was addressed to him and did not send a follow-up letter to Plaintiff. Plaintiff has no recollection of when he first saw the March 10, 2006, letter addressed to him. The letter addressed to Plaintiff states, in relevant part, that "[t]his will confirm our telephone conversation of MARCH 10, 2006 in which you agreed to make payments in this matter at the rate of $175.00 per month, beginning MARCH 28, 2006." The March 13, 2006 letter addressed to Plaintiff makes no mention of a settlement and makes no promises that a judgment would not be taken.[3] Plaintiff is not aware of any specific language from

---

[2] Plaintiff objects to the court's consideration of the Fax Transmittal Sheet and cover letter on the grounds that it "lacks proper foundation" and on the grounds that it is not authenticated. Plaintiff has provided the court with nothing to refute the authenticity of the Fax Transmittal Sheet and cover letter. The court finds that this document is sufficiently documented for purposes of summary judgment. See Rule 56(c). Plaintiff further objects on the grounds that "Defendant has failed to provide any testimony from Plaintiff verifying that Plaintiff ever reviewed, authorized or was aware of this document prior to its transmission to Defendant." Doc. 36 at 1. As discussed below, as Plaintiff signed the power of attorney authorizing AMAR to mediate on his behalf in regard to his credit card debt, Plaintiff's prior knowledge of the Fax Transmittal Sheet and cover letter are not relevant.

[3] Plaintiff admits that the word "settlement" was not used in the letter of March 10, 2006. Plaintiff further acknowledges that the letter did not state that a default judgment would not be taken. Plaintiff contends, however, that "this was understood to be true" by him. Doc. 36 at 2. Nonetheless, the document speaks for itself as to what is says.

3

Defendant stating that no Judgment would be taken against him.

Plaintiff based his decision not to appear in court on March 13, 2006, upon a conversation he had with someone at AMAR and not upon any representation or statement made by Defendant. Plaintiff contends that he did not know prior to the filing of the matter under consideration that AMAR had sent its March 10, 2006 letter and that Defendant made no representations or promises to him that it would not take a judgment against him in the St. Louis County lawsuit.

In a letter dated October 16, 2006, and addressed to David Gamache, an attorney representing Plaintiff stated, in relevant part, that Defendant violated the Fair Debt Collection Practices Act ("FDCPA") by sending "a deceptive communication to Mr. Anderson telling him the case was settled, but then immediately [taking] a default judgment against him" and by "negotiat[ing] a settlement with Mr. Anderson through a non-attorney third party." Plaintiff's attorney further stated in the letter that he was authorized by Plaintiff to file a lawsuit against Defendant and that, prior to filing suit, "I am willing to give you an opportunity to settle this claim for $5,000.00.  If I have not heard back from you within the next 10 days, I will presume you are not interested in settling and will file suit without further notice." Def. Ex. C.  In a letter dated October 24, 2006, addressed to Plaintiff's attorney, Defendant denied that it violated the FDCPA.  Def. Ex. D.

On February 15, 2007, Plaintiff filed the Complaint in the matter under consideration in which he alleges that in its attempt to collect the alleged debt from Plaintiff, Defendant violated the FDCPA, 15 U.S.C. §1692e(10), by the following conduct: (1) using false, deceptive, and/or misleading means to collect a debt by sending Plaintiff, an unsophisticated consumer, a communication suggesting that Worldwide's claims had been settled pursuant to Plaintiff's agreement to pay $175 a month when the lawsuit had not been settled and with Defendant's knowing that it intended to take a default judgment

4

against Plaintiff, and (2) taking a default judgment against Plaintiff on March 2006 after communicating to Plaintiff its willingness to accept monthly payments of $175, thereby causing Plaintiff to mistakenly conclude that the lawsuit filed by Worldwide had been settled and that no default judgment would be taken against Plaintiff.[4]  In the pending motion for summary judgment Defendant asserts that the undisputed facts establish that it did not violate the FDCPA.

## STANDARD FOR SUMMARY JUDGMENT

The court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The substantive law determines which facts are critical and which are irrelevant.  Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id.  See also  Fenny v. Dakota, Minn.& E.R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003) (holding that an issue is genuine "if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party").

A moving party always bears the burden of informing the court of the basis of its motion. Celotex, 477 U.S. at 323.  Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at

---

[4] Plaintiff also alleged that Defendant violated the FDCPA by assisting AMAR in the unauthorized practice of law.  By decision dated May 31, 2007, the court dismissed this allegation finding that it is not cognizable pursuant to the FDCPA.  Doc. 18.

247. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 256. "Factual disputes that are irrelevant or unnecessary" will not preclude summary judgment. Id. at 248.

In passing on a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in its favor. Id. at 255; Raschick v. Prudent Supply, Inc., 830 F.2d 1497, 1499 (8th Cir. 1987). The court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. However, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." Id. at 252. With these principles in mind, the court turns to an analysis of Defendant's motion.

## LEGAL FRAMEWORK AND DISCUSSION

Section 1692e of the FDCPA provides, in relevant part:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

...

(9)  The use or distribution of any written communication ... which creates a false impression as to its source, authorization, or approval.

(10)  The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

"In evaluating whether a debt collection letter is false, misleading or deceptive, the letter must be viewed through the eyes of the unsophisticated consumer." Duffy v. Landberg, 215 F.3d 871, 873 (8th Cir. 2000) (citing Jang v. A.M. Miller and Assoc., 122 F.3d 480, 483 (7th Cir.1997)).

6

Nonetheless, the FDCPA has an "objective level of reasonableness ... that prevents liability for bizarre or idiosyncratic interpretations of collection notices." Peters v. Gen. Serv. Bureau, Inc., 277 F.3d 1051, 1055 (8th Cir. 2002) (quoting Wilson v. Quadramed Corp., 225 F.3d 350, 354 (3rd Cir.2000)). "The unsophisticated consumer test is a practical one, and statements that are merely 'susceptible of an ingenious misreading' do not violate the FDCPA." Id. at 1056 (quoting White v. Goodman, 200 F.3d 1016, 1020 (7th Cir.2000)).

As stated above Plaintiff contends Defendant violated the FDCPA by sending Plaintiff a communication suggesting that Worldwide's claims had been settled pursuant to Plaintiff's agreement to pay $175 a month when the lawsuit had not been settled and with G&M's knowing that it intended to take a default judgment against Plaintiff and by taking a default judgment against Plaintiff after communicating to Plaintiff its willingness to accept monthly payments of $175.

First, it is undisputed that Plaintiff conferred power of attorney upon AMAR. Under Missouri law a "principal can expressly confer authority by telling his agent what to do or by knowingly acquiescing to the agent's actions." Essco Geometric v. Harvard Indus., 46 F.3d 718, 723-24 (8th Cir. 1995) (citing Rosenblum v. Jacks or Better of America West, Inc., 745 S.W.2d 754, 760 (Mo. Ct. App.1988)). "Implied authority flows from express authority, and 'encompasses the power to act in ways reasonably necessary to accomplish the purpose for which express authority was granted.'" Id. (quoting Rosenblum, 745 S.W.2d at 760). The power of attorney which Plaintiff conferred upon AMAR explicitly gave AMAR the authority to mediate a resolution and effect a reasonable settlement with Defendant regarding Plaintiff's $2,328 debt to Worldwide. As such, the undisputed facts establish that AMAR was acting within its authority when it reached an agreement with Defendant regarding Plaintiff's debt.

Second, it is undisputed that all of Plaintiff's misconceptions are attributable to AMAR, not to Defendant. Indeed, Plaintiff does not assert that Defendant made any representations to him as to whether a judgment would be entered in the St. Louis County lawsuit. In fact, Defendant arguably would have violated the FDCPA if it had communicated directly with Plaintiff rather than with his appointed agent, AMAR. See Schmitt v. FMA Alliance, 398 F.3d 995, 997 (8th Cir. 2005) (holding that a debt collector may not communicate directly with a consumer when the debt collector knows that the consumer is represented by an attorney) (citing 15 U.S.C. § 1692c(a)(2))[5].

Third, to the extent that Plaintiff alleges a violation of the FDCPA based on the March 10, 2006 letter addressed to, but not received by, him, this letter merely reflects confirmation of an agreement reached pursuant to negotiations between AMAR, who negotiated with power of attorney from Plaintiff, and Defendant. Plaintiff suggests that the March 10, 2006 letter included statements which were false because the letter was addressed to him but not sent to him and because the letter references a telephone conversation between Plaintiff and Defendant which did not take place. To find Defendant liable under the FDCPA based on a letter which Plaintiff did not receive and upon which he could not have possibly relied would contort the FDCPA's objective of reasonableness and result

---

[5]   15 U.S.C. § 1692c(a)(2) provides:

Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt –

...

(2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer.

in an idiosyncratic interpretation of the FDCPA. See Peters, 277 F.3d at 1055.

Fourth, AMAR acting as Plaintiff's agent acknowledged in its letter to Defendant that Plaintiff understood that a judgment would be taken against him in the event an agreement was reached and further represented that Plaintiff would pay $175 a month until the debt was retired. Because Plaintiff appointed AMAR as his agent he cannot claim that he did not understand or was deceived as to whether a default judgment would be taken. See S.S. Silberblatt, Inc. v. Seaboard Sur. Co., 417 F.2d 1043, 1049 (8th Cir. 1969) ("It is settled that a company cannot be allowed to hold out another as its agent and then disavow responsibility for his dealings. Neither can a company place an agent in such a situation that a person of ordinary prudence would be justified in presuming that such agent had authority to perform an act on behalf of his principal without becoming estopped from denying the agent's authority."). Further, agency law provides that "knowledge of the agent is imputed to the principal." Schmidt, 398 F.3d at 997. Plaintiff, therefore, cannot claim that he was unaware that a default judgment would be taken against him.

Fifth, to the extent that Plaintiff claims that the power of attorney was not binding because its existence was not directly communicated to Defendant by him but rather was communicated to Defendant by AMAR, as stated above,15 U.S.C. § 1692c(b) precludes a debt collector such as Defendant from communicating with a debtor who is represented by counsel. While AMAR was not acting as Plaintiff's attorney, it was acting as his agent for purposes of mediating resolution of his debt. Under such circumstances, Plaintiff cannot claim that the power of attorney was not binding because he personally did not communicate its existence to Defendant.

Sixth, to the extent that Plaintiff reiterates his claim that Defendant was engaged in the unauthorized practice of law and that it thereby violated the FDCPA, this court has previously held

9

pursuant to Defendant's Motion to Dismiss that a claim that the unauthorized practice of law violates the FDCPA is not cognizable pursuant to the FDCPA and that such a question is in the province of the state courts.  Furthermore, Mo. Rev. Stat. 404.710 provides in relevant part:

> 1. A principal may delegate to an attorney in fact in a power of attorney general powers to act in a fiduciary capacity on the principal's behalf with respect to all lawful subjects and purposes or with respect to one or more express subjects or purposes. A power of attorney with general powers may be durable or not durable.

Section 404.710 proceeds to set forth things which an attorney-in-fact can do which include the power to act or not to act, to consent or not to consent to a contract, petition or other pleading. Mo. Rev. Stat. § 404.710(8) states:

> A third person may freely rely on, contract and deal with an attorney in fact delegated general powers with respect to the subjects and purposes encompassed or expressed in the power of attorney without regard to whether the power of attorney expressly identifies the specific property, account, security, storage facility or matter as being within the scope of a subject or purpose contained in the power of attorney, and without regard to whether the power of attorney expressly authorizes the specific act, transaction or decision by the attorney in fact.

As such, when mediating with AMAR in regard to Plaintiff's credit card debt, Defendant was not only engaged in conduct permitted by Missouri law but it properly relied upon the delegation of power set forth in the power of attorney agreement signed by Plaintiff.

Seventh, as stated above, it is undisputed that Defendant did not communicate with Plaintiff. To the extent that Plaintiff contends that Defendant's communications with AMAR violate the FDCPA, the most recent case authority provides that the standard for determining whether communications violate the FDCPA is not as stringent as that which is applicable to the "unsophisticated consumer" when communications are made to an individual representing a consumer. Upon holding that the "'unsophisticated consumer' standpoint is inappropriate for judging

communications with lawyers," Judge Posner of the Seventh Circuit Court of Appeals held in <u>Evory v. RJM Acquisitions</u>, 505 F.3d 769, 2007 WL 3071678 at *8 (7th Cir. Oct. 23, 2007), that "[m]ost lawyers who represent consumers in debt collection cases are familiar with debt collection law" and "knowledgeable about the law and practices of debt collection." "[T]herefore [they are] unlikely to be deceived." <u>Id.</u> Judge Posner concluded that "since the debt collector cannot be expected to know how knowledgeable a particular consumer's lawyer, is, ... a representation by a debt collector that would be unlikely to deceive a competent lawyer ... should not be actionable." <u>Id.</u> See also <u>Guerrero v. RJM Acquisitions, LLC</u>, 499 F.3d 926, 939 (9th Cir. 2007) (holding that the prohibitions of the FDCPA do not apply where a debt collector ceases contact with the debtor and instead communicates exclusively with an attorney hired to represent the debtor). But see <u>Sayyed v. Wolpoff</u>, 485 F.3d 226, 232-33 (4th Cir. 2007) (holding that a communication with an attorney representing a debtor can violate the FDCPA; such a communication "qualifies as an indirect communication to the debtor").[6] While AMAR was not engaged in the practice of law when it represented Plaintiff in regard to mediating a resolution of Plaintiff's credit card debt owed to Worldwide, the logic of <u>Evory</u> is applicable to a debt management representative such as AMAR. As such, the court finds that the undisputed facts establish that Defendant did not violate the FDCPA.

## CONCLUSION

For the reasons more fully set forth above, the court finds that the undisputed facts establish

---

[6] Even in <u>Sayyed</u>, 485 F.3d at 232, where the Fourth Circuit held that communications to an attorney representing a debtor could violate the FDCPA, the communications found to be unlawful were blatantly false, misrepresentations of fact, and failed to identify the source of the communication as coming from a debt collector.

that Defendant did not violate the FDCPA and that, therefore, summary judgment should be granted in favor of Defendant.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment filed by Defendant Gamache & Myers, P.C., is **GRANTED**; Doc. 35.

**IT IS FURTHER ORDERED** that a separate judgment shall issue incorporating this Memorandum Opinion.

> /s/Mary Ann L. Medler
> MARY ANN L. MEDLER
> UNITED STATES MAGISTRATE JUDGE

Dated this 10th day of December, 2007.